**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BLAIR JONES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| BUREAU OF PRISONS, et al., | : |
| | : |
| Defendants. | : |

**Hon. Noel L. Hillman**

Civil No. 10-0297 (NLH)

**OPINION**

**APPEARANCES:**

> BLAIR JONES, #05118-087, Plaintiff <u>Pro Se</u>
> FCI Fort Dix
> P.O. Box 2000
> Fort Dix, New Jersey  08640

**HILLMAN**, District Judge

Plaintiff Blair Jones, a prisoner who is currently confined at FCI Fort Dix,[1] submitted to the Clerk for filing a <u>pro se</u> Complaint with an application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915.  This Court will grant Plaintiff's application to proceed <u>in forma pauperis</u>, assess the $350.00 filing fee against Plaintiff, and collect the fee in installment payments pursuant to 28 U.S.C. § 1915.  In accordance with the requirements of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court

---

[1] Plaintiff is serving a 240-month term of incarceration that was imposed on October 4, 2006, based on his plea of guilty to engaging in a continuing criminal enterprise, contrary to 21 U.S.C. §§ 848 and 841(b)(1)(A).  <u>See</u> <u>United States v. Jones</u>, Crim. No. 05-0095 (IMK) judgment (N.D. W. Va. Oct. 4, 2006). Plaintiff's projected release date is January 25, 2023.  <u>See</u> Fed. Bureau of Prisons, Inmate Locator (Aug. 9, 2010), <u>http://www.bop.gov</u>/iloc2/InmateFinderServlet?Transaction=IDSearch &needingMoreList=false&IDType=IRN&IDNumber=05118-087&x=52&y=8.

will dismiss the Complaint without prejudice to the filing of an amended complaint and deny Plaintiff's motions.

## I.  BACKGROUND

Plaintiff brings this Complaint against the Bureau of Prisons ("BOP") (Docket Entry #1 at p. 2 caption); Dr. Olson, a physician at FCI McKean in Bradford, Pennsylvania (id. at pp. 4-5); Dr. Morales, a physician at FCI Fairton (id. at p. 5); Francisco J. Quintana, Warden of FCI McKean (id.); Dr. Chung, a physician at FCI Fort Dix (id. at p. 6); Sam Syjongtian, physician assistant at FCI Fort Dix (id.); Mr. Shaff, Unit Manager at FCI Fort Dix (id.); and the BOP's Administrative Remedy Coordinator for the Central Office (id. at p. 7).

In response to the questions on the form complaint, Plaintiff asserts that he exhausted the BOP's three-step administrative remedy program when he "filed [his] last letter to the Administrative Remedy Coordinator at the central office in D.C. in November of 2008.  He never responded back to my last BP-11."  (Docket Entry #1 at p. 7.)

Plaintiff asserts the following facts:

> I was arrested on 7/08/05, the same day that I had an appointment with neuro-surgeon, Dr. Bails, who was going to look over the MRI that was just performed on me, and examine my lower back and neck and discuss what options I had.  Over a year later, a Judge ORDERED that I be given a new MRI and the opportunity to speak to a neurosurgeon.  Before I could consult with a neuro-surgeon, I was shipped to FCI Fairton.  (They slow walked me)

2

> Shortly after my arrival on 5/08/08, I saw
> Dr. Morales who refused to schedule me to see
> a neuro-surgeon for a consultation.  Eight
> months later I was shipped to FCI Fort Dix.
> Shortly thereafter I spoke to Dr. Chung, who,
> after much discussion, arranged to have me
> see a neuro-surgeon for a consultation.  By
> then the MRI was too old.  After much
> discussion, I received yet another MRI in the
> summer of 2009.  It is now early 2010 and the
> powers that be at medical refuse to let me
> see a neuro-surgeon for a consultation.

(Docket Entry #1 at p. 8 Statement of Claims.)

Plaintiff asserts further that the doctor at FCI McKean (where Plaintiff was incarcerated for 16 months, from December 28, 2006, until May 8, 2008) violated his constitutional rights as follows:  "[Dr. Olson] had an MRI performed on my neck, but not on my lower back.  He failed to schedule me to see a neurosurgeon in a timely manner so I could get operated on so I wouldn't be in so much pain.  I am still suffering because of his failure to act, and this constitutes cruel and unusual punishment."  (Docket Entry #1 at p. 5.)  The Warden of FCI McKean allegedly violated Plaintiff's rights in the following way:  "I sent [Francisco J. Quintana] BP-9's asking him to intervene on my behalf so that I could see a neurosurgeon and he didn't help me at all.  So I continue to suffer to this very day because of his inaction.  The pain and suffering is a violation of my Rights against cruel and unusual punishment."  (Id.)

Plaintiff asserts that the physician at FCI Fairton (where Plaintiff was incarcerated for eight months, from May 8, 2008,

until January 2009) violated his rights as follows:  "Dr. Morales also failed to schedule me to see a neurosurgeon in a timely manner.  His failure to schedule me to see a neurosurgeon so I could be operated on and obtain relief from pain in my neck constitutes cruel and unusual punishment in violation of my Constitutional Right(s)."  (Docket Entry #1 at p. 5.)

Plaintiff alleges that Dr. Chung, the physician at FCI Fort Dix (where Plaintiff has been incarcerated since January 2009), violated his constitutional rights in the following ways:  "[Dr. Chung] sent me to see a neurosurgeon, but the MRI was too old. He had another MRI performed on my neck, but not on my lower back.  Now he won't let me see a neuro-surgeon, so I continue to suffer because of his inaction.  This is a violation of my constitutional rights."  (Docket Entry #1 at p. 6.)  Plaintiff asserts that the physician assistant at FCI Fort Dix (Sam Syjongtian) violated his rights "[w]hen I saw him on 12/01/09 [and] he said that I no longer needed a first floor pass and he didn't even examine me."  (Id.)  The Unit Manager (Mr. Shaff) at FCI Fort Dix allegedly violated Plaintiff's rights as follows: "I spoke to him about inability to traverse staircases without it causing me extreme pain and asked his help in getting my first floor pass reinstated and all he did was admonish me for not walking up the staircase and delivering the BP-8's to him personally.  This is deliberate indifference to my [] medical

condition and him wanting me to walk up the staircase only exacerbates my condition."  (Id. at pp. 6-7.)

Finally, Plaintiff complains that the Administrative Remedy Coordinator for the Central Office of the BOP violated his rights in November 2008 as follows:  "I sent him three BO-11's and all he did was complain about my use of the wrong size paper, writing on the back of the paper, etc., totally indifferent to my medical complaint/condition(s)."  (Docket Entry #1 at p. 7.)

Plaintiff seeks relief as follows:

> I want proper medical treatment in the way of an MRI on my lower back and neck and the opportunity to consult with a neuro-surgeon in a timely manner and any and all the medical procedures, medications, appliances, care, etc. required to enable me to regain (full?) control/motion of my arms, fingers, legs and neck, and stop the burning sensations and numbness in said extremities. I want five million dollars ($5,000,000) in compensatory damages for pain and suffering and mental anguish.  I want fifteen million dollars ($15,000,000) in punitive damages to help insure that this doesn't happen to anyone else, and any/all other costs incurred in this action.

(Docket Entry #1 at p. 9 Relief.)

On January 22, 2010, the Clerk received from Plaintiff a motion for restraining order and five one-page exhibits (2005 reports from Plaintiff's chiropractor).  (Docket Entry #2.) Plaintiff seeks an order directing officials at FCI Fort Dix to renew Plaintiff's "First Floor Pass" which would otherwise expire

on January 21, 2010.  Referring to exhibits one through five,
Plaintiff asserts:

>Plaintiff has a degenerative disc disease
>(see Exhibit #1) affecting the cervical and
>lumbar regions of the spinal column (see all
>Exhibits), limiting his range of motion (see
>Exhibit #2, #3, and #4), coupled with
>deformation of the spine (see Exhibit #5.)
>
>This condition causes Plaintiff to lose
>consciousness at times and fall down and
>causing injuries to himself (see Exhibit #5).
>
>Merely walking at times can cause severe pain
>and only exacerbates the condition (see
>Exhibit #4).
>
>Plaintiff has difficulty ascending
>staircases, and even more difficulty
>descending staircases because of the disc
>disease.
>
>Plaintiff has a "First Floor Pass" so he
>doesn't have to ascend/descend staircases.
>
>**Said 'pass' expires on January 21, 2010.**
>
>the Defendants et al. in the case sub judice
>refuse to issue Plaintiff a new 'pass.'
>
>Moving Plaintiff to an upper floor, causing
>him to ascend/descend staircases, would
>inflict severe pain, suffering, and mental
>anguish on Plaintiff, constituting cruel and
>unusual punishment . . .
>
>WHEREFORE, for the foregoing reasons,
>Plaintiff asks for a Restraining Order
>against the Defendants preventing them from
>moving Plaintiff to an upper floor . . .

(Docket Entry #2 at pp. 1-2.)

Attached to the motion are five one-page medical reports
from Alan J. Cappellini, a chiropractor located in Uniontown,

Pennsylvania, concerning treatment provided to Plaintiff on March 10, 2005, April 4, 2005, April 11, 2005, April 28, 2005, and July 1, 2005, prior to Plaintiff's arrest and detention on July 12, 2005. (Docket Entry #2-1, pp. 1-5.) See United States v. Jones, Crim. No. 05-0079 (IMK) order (N.D. W. Va. July 12, 2005). Each report states Plaintiff's date of birth (March 3, 1956), the symptoms reported by Plaintiff, the results of a physical exam, Dr. Cappellini's "impression" at the time of the visit, and treatment provided and recommended. The final report dated July 1, 2005, states:

> The patient enters the office today reporting low back pain with radiation to the right hip. The condition is exacerbated by walking.
>
> EXAM: Paravertebral hypertonicity, positive right Gaenslen test. Right hip flexion weakness. Decreased abnormal range of motion and tenderness to palpation. Noted is a right pelvic deficiency with left lumbodorsal compensatory antalgia and prone extension weakness right lower extremity. DTRs are unchanged.
>
> IMPRESSION: LUMBOSACRAL STRAIN, LUMBAR SEGMENTAL DYSFUNCTION, DJD.
>
> TREATMENT: Adjustment lumbosacral lumbar spine, paravertebral massage, Home instructions include the utilization of ice. The patient reported feeling better. He is released to self reliance home care and instructed to contact this office as needed should symptoms persist.

(Docket Entry #2-1 at p. 4.)

On February 1, 2010, the Clerk received from Plaintiff a
motion (Docket Entry #3) asking this Court to direct defendants
"to provide Plaintiff any and all documents sent to him via his
unit team, and any other documents/forms that a prisoner would
have access to under 'normal conditions.'" (Docket Entry #3 at
p. 2.) Plaintiff seeks such injunctive relief on the ground that
the offices of members of his Unit Team are located on the second
floor in the housing unit and Plaintiff "is unable to receive
documents sent to him via his unit team" because he experiences
pain walking, ascending stairs, and descending stairs. (Id.)
Attached to the application is another copy of Dr. Cappellini's
report dated April 4, 2005, which sets forth the following:
"IMPRESSION:  LUMBOSACRAL STRAIN WITH ASSOCIATED NEURALGIA,
LUMBAR SEGMENTAL DYSFUNCTION, DEGENERATIVE DISC DISEASE/POST
TRAUMATIC." (Docket Entry #3 at p. 3.) The report indicates
that Dr. Cappellini provided the following treatment:  "ES
interferential current lumbosacral spine 15 minutes and an
adjustment lumbosacral lumbar spine." (Id.) The report
recommends the following Home Instructions:  "Ice and heat
contrast and self reliance home care. The patient is to present
in the office in 3 days should symptoms persist; otherwise he is
to return to self reliance home care and return prn." (Id.)
Finally, the prognosis is "Fair with intermittent support[ive]
care." (Id.)

8

On February 3, 2010, the Clerk received from Plaintiff a motion (Docket Entry #4) for an order directing the FCI Fort Dix defendants to schedule an appointment for Plaintiff to consult with a neurosurgeon within 30 days.  Plaintiff asserts that, although he has had four MRIs, when he consulted with a neurosurgeon, the neurosurgeon indicated that the MRI (the last one was done five months ago) was not current.  Plaintiff asserts that he "is in extreme pain and has been for the entire time he has been incarcerated, and for several years prior."  (Id. at p. 2.)

On February 16, 2010, the Clerk received from Plaintiff 26 exhibits, which Plaintiff desires to be attached to the Complaint.  (Docket Entry #5.)  Several exhibits were included in Plaintiff's prior submissions, but these exhibits also include copies documenting Plaintiff's pursuit of relief through the Bureau of Prisons ("BOP") Administrative Remedy Program.  The Informal Resolution form, dated March 20, 2008, shows that Plaintiff asked to see a neurologist because he has a disc at the base of the neck causing burning in the neck, pain and numbness in hands.  (Id. at p. 19.)  In response, the correctional counselor states that he spoke to the Health Department staff and he "was informed that you must sign up for sick-call so that your issues can be addressed by the medical staff."  (Id. at 20.)

Plaintiff's administrative remedy request to the warden is undated. (Docket Entry #5 at 22.) Plaintiff requested an MRI and an appointment with a neurosurgeon to evaluate whether he needs surgery since he was experiencing pain, burning and numbness of arms and hands; Plaintiff indicates that he was receiving piroxican and topiramate as medications. (Id.) On April 11, 2008, Warden Quintana granted Plaintiff's request for an MRI but denied the request to consult with a neurosurgeon:

> This is in response to your Request for Administrative Remedy receipted in my office on April 2, 2008, in which you request a MRI and an evaluation by a neurosurgeon.
>
> An investigation into this matter reveals the Utilization Review Committee has approved you for a MRI. Evaluation by a neurosurgeon is not clinically indicated at this time. The Clinical Director has reviewed this response and agrees.
>
> Based on this information, your Request for Administrative Remedy is partially granted.

(Docket Entry #5 at p. 24.)

Plaintiff appealed to the Regional Director on April 15, 2008, on the ground that "I am being denied the appointment I have ask[ed] for with a neurosurgeon. I have explained to these people that it was recommended that I see a neurosurgeon and had an appointment the day I was pick[ed] up by FBI and taken into custody in 2005. My problem has gotten worse. I am experiencing a lot of pain & burning & numbness of my arms & hands from this."

(Docket Entry #5 at 25.)  On May 21, 2008, Regional Director D. Scott Dodrill denied the appeal as follows:

> In your appeal, you contend you are not receiving adequate medical care at FCI McKean for pain, burning and numbness of your arms and hands.  You state your problem is getting worse and [you] need to see a neurosurgeon.
>
> A review of your appeal reveals the Warden . . . informed you that the Utilization Review Committee approved you for an MRI, but an evaluation by a neurosurgeon was not clinically indicated.  On April 21, 2008, you received the MRI, which revealed discogenic changes.  On May 2, 2008, you transferred to FCI Fairton, and on May 16, 2008, you were seen by the Clinical Director.  You reported you were taking pain medication intermittently.  He reviewed your MRI results and determined there was no medical indication for referral to a neurosurgeon at that time.  You continue to have access to sick call for your concerns.  Medical staff advise that you are receiving appropriate medical treatment.  Accordingly, your appeal is denied.

(Docket Entry #5 at p. 27.)

Plaintiff appealed to the Central Office.  He states that after the doctor at FCI Fairton reviewed the MRI test results, the doctor stated that there was nothing else he could do for this condition.  (Docket Entry #5 at p. 32.)  Plaintiff further states:  "I did not tell him that I was taking my medication intermittently.  I said I was tak[ing] medication that was not helping me at pill line and requested to have I.P. back so that I could take it when the pain got really bad instead of having to wait for pill line and get medication that does me no good."

11

(Id.)  The Central Office ultimately denied the appeal by failing to respond within 40 days.  Id. at p. 43.

On May 6, 2010, the Clerk received a fourth motion from Plaintiff.  Plaintiff asks this Court to direct defendants to produce various documents "which Plaintiff asserts are of value in prosecuting the case sub judice."  (Docket Entry #6.)

## II.  STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "must contain (1) a short and plain statement of the grounds of the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . ."  Fed. R. Civ. P. 8(a).  Rule 8(d)(1) provides that "[e]ach allegation

12

must be simple, concise, and direct.  No technical form is required."  Fed. R. Civ. P. 8(d).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  As for dismissal for failure to state a claim, the Third Circuit recently clarified the standard, in light of the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), as follows:

> Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a[] showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.  It remains an acceptable statement of the standard, for example, that courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinker, 292 F. 3d at 374 n.7.  See also Twombly, 127 S. Ct. at 1969 n.8 (citing as consistent with its rejection of the "no set of facts" language the statement that "if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial , establish a case which would entitle them to . . . relief, the motion to dismiss should not have been granted") (citation omitted).

                *                    *                         *

13

The issues raised by <u>Twombly</u> are not easily resolved, and likely will be a source of controversy for years to come.  Therefore, we decline at this point to read <u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context. Reading <u>Twombly</u> to impose a "plausibility" requirement outside the § 1 context, however, leaves us with the question of what it might mean.  "Plausibility" is related to the requirement of a Rule 8 "showing."  In its general discussion, the Supreme Court explained that the concept of a "showing" requires only notice of a claim and its grounds, and distinguished such a showing from "a pleader's bare averment that he wants relief and is entitled to it."  <u>Twombly</u>, 127 S. Ct. at 1965 n.3.  While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 1965.

The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading state, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element . . . .

The complaint at issue in this case clearly satisfies this pleading standard, making a sufficient showing of enough factual matter (taken as true) to suggest the required elements of Phillips' claims.

<u>Phillips v. County of Allegheny</u>, 515 F. 3d 224, 233, 234-35 (3d Cir. 2008) (citation and internal quotation marks omitted).

14

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, see Erickson v. Pardus, 551 U.S. 89 (2007), a principle that survives, but does not supersede, the pleading requirements of Twombly.  A pro se prisoner plaintiff needs to allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted, Twombly, supra.; the Court need not, however, credit a pro se plaintiff's "legal conclusions." Morse v. Lower Merion School Dist., 132 F. 3d 902, 906 (3d Cir. 1997). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction.  See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made,

15

or which shall be made, under their authority."  U.S. Const. art.
III., § 2; see also 28 U.S.C. § 1331.

In Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for
the first time an implied private action for damages against
federal officers alleged to have violated a citizen's
constitutional rights."  Correctional Services Corp. v. Malesko,
534 U.S. 61, 66 (2001).  The Supreme Court found an implied
damages remedy available under the Fourth Amendment.  Bivens, 403
U.S. at 397.  The Supreme Court has recognized an implied damages
remedy under the Due Process clause of the Fifth Amendment, Davis
v. Passman, 442 U.S. 228 (1979), and the Cruel and Unusual
Punishment clause of the Eighth Amendment, Carlson v. Green, 446
U.S. 14 (1980).  To state a claim for damages under Bivens, a
plaintiff must show that federal officers violated his
constitutional rights.  Malesko, 534 U.S. at 66.

A.  Failure to Schedule MRI and Evaluation by Neurosurgeon

Plaintiff complains that defendants have been deliberately
indifferent to his back pain because they did not send him for an
MRI and an evaluation by a neurosurgeon immediately each time he
made a request.  The Eighth Amendment's prohibition against cruel
and unusual punishment obligates prison authorities to provide
medical care to inmates.  Estelle v. Gamble, 429 U.S. 97, 103
(1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To

16

state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  To state a cognizable medical claim, inmates must "demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious."  <u>Rouse</u>, 182 F.3d at 197.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

"Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  <u>Iqbal</u>, 129 S. Ct. at 1948.[2] Deliberate indifference includes "indifference ... manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 90 (2007) (quoting <u>Estelle</u>, 429 U.S. at 105) (footnotes and internal quotation marks

---

[2] <u>Accord Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").

omitted).  To establish deliberate indifference, a plaintiff must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond.  <u>Farmer</u>, 511 U.S. at 837; <u>Natale</u>, 318 F.3d at 582.  "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001).  Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106.  Deliberate indifference may be found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  <u>Rouse</u>, 182 F.3d at 197.

The instant Complaint, as supplemented by Plaintiff's exhibits and other submissions, indicates that Plaintiff suffers from back pain due to "LUMBOSACRAL STRAIN" and "LUMBAR SEGMENTAL DYSFUNCTION," <u>see</u> Docket Entry #2-1 at p. 4, which constitutes a serious medical need.  However, Plaintiff's submissions do not

assert facts showing that any defendant violated his Eighth
Amendment rights by being deliberately indifferent to his back
pain.  Plaintiff's submissions do not show that defendants
intentionally refused to provide any medically necessary care.
In fact, it is clear from Plaintiff's allegations that officials
prescribed various medications and sent Plaintiff for four MRIs,
although he asserts that the prescribed treatment did not
eliminate his pain.[3]  Plaintiff nevertheless maintains that
defendants delayed necessary medical care for non-medical reasons
by failing to schedule an evaluation by a neurosurgeon at the
time Plaintiff made his request and while the MRI was still
current.  However, the facts set forth in his submissions and
exhibits show that prison medical officials refused to schedule
an evaluation with a neurosurgeon because they concluded that an
evaluation by a neurosurgeon was not medically necessary.[4]  For

---

[3] The Eighth Amendment does not guarantee freedom from back
pain during incarceration.

[4] Plaintiff asserts that a judge ordered prison officials to
have Plaintiff evaluated by a neurosurgeon while he was a
pretrial detainee.  This Court has reviewed the docket (and
docket entries, which are available electronically) in
Plaintiff's criminal proceeding before United States District
Judge Irene M. Keeley in the Northern District of West Virginia.
The docket indicates that Mr. Jones filed a motion to transfer
him to a medical facility, Judge Keeley denied the motion, and on
June 20, 2006, Judge Keeley ordered Petitioner's custodians to
take him for an MRI.  However, nothing on the docket or provided
to this Court by Plaintiff shows that Judge Keeley made a
determination that neurosurgery or an evaluation by a
neurosurgeon was medically necessary or that Judge Keeley ordered
(continued...)

19

example, the Regional Director's decision denying Plaintiff's appeal states that medical officials determined that an evaluation by a neurosurgeon is not medically necessary for Plaintiff's condition.  See Docket Entry #5 at p. 27 ("On April 21, 2008, you received the MRI, which revealed discogenic changes.  On May 2, 2008, you transferred to FCI Fairton, and on May 16, 2008, you were seen by the Clinical Director.  You reported you were taking pain medication intermittently.  He reviewed your MRI results and determined there was no medical indication for referral to a neurosurgeon . . . .  You continue to have access to sick call for your concerns.  Medical staff advise that you are receiving appropriate medical treatment").

"To show deliberate indifference, a plaintiff must do more than simply allege medical malpractice or express disagreement regarding the treatment provided."  Watkins v. Cape May County Correc. Center (Medical Dept.), 240 Fed. App'x 985, 986 (3d Cir. 2007) (citing Monmouth County Corr. Inst. Inmates, 834 F. 2d at 346).  As the Supreme Court explained:

> [T]he question whether an X-ray or additional
> diagnostic techniques or forms of treatment
> is indicated is a classic example of a matter
> for medical judgment. A medical decision not
> to order an X-ray, or like measures, does not
> represent cruel and unusual punishment. At
> most it is medical malpractice . . .

---

[4](...continued)
such an evaluation.  See United States v. Jones, Crim. No. 05-0095 (IMK) (N.D. W. Va. filed Oct. 12, 2005).

Estelle, 429 U.S. at 107.

In this case, Plaintiff's medical care claim fails because the facts alleged in the Complaint do not show deliberate indifference; rather, Plaintiff's allegations show that he disagreed with the treatment provided. But such disagreement does not satisfy the deliberate indifference standard. Accordingly, this Court will dismiss Plaintiff's medical care claim for failure to state a claim upon which relief may be granted.[5]

---

[5] This Court will deny Plaintiff's motion to compel defendants to schedule an evaluation by a neurosurgeon (Docket Entry #4) and motions for the production of various documents (Docket Entry Nos. 3 and 6) as moot.

B.  Failure to Properly Process Administrative Appeal

     Plaintiff sues the Administrative Remedy Coordinator for the BOP's Central Office, complaining that the Central Office did not properly process and respond to his appeal.  This Court construes these allegations as an attempt to state a claim under the Petition Clause of the First Amendment and/or the Due Process Clause of the Fifth Amendment.  However, "[p]risoners do not have a constitutional right to prison grievance procedures.  Thus, defendants' alleged obstruction of such procedures is not independently actionable."  Heleva v. Kramer, 214 Fed. App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F. 3d 641, 647 (7th Cir. 2001)); Pressley v. Johnson, 268 Fed. App'x 181, 184 (3d Cir. 2008) ("Pressley also complained about the investigation and processing of his inmate grievances.  Because there is no due process right to a prison grievance procedure, Pressley's allegations did not give rise to a Fourteenth Amendment violation"); Stringer v. Bureau of Prisons, 145 Fed. App'x. 751, 753 (3d Cir. 2005).[6]  Thus, defendants' alleged

_____

     [6] See also Olim v. Wakinekona, 461 U.S. 238, 250-251 (1983) ("Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . .  The [government] may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice [it] does not create an independent substantive right"); Hewitt v. Helms, 459 U.S. 460, 469 (1983) ("we have never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest
                                                        (continued...)

22

failure to properly address Plaintiff's administrative appeal is not actionable under <u>Bivens</u> and will be dismissed.[7]

C.  Failure to Renew First Floor Pass

Plaintiff also sues the Unit Manager and a physician assistant at FCI Fort Dix for failing to renew Plaintiff's first floor pass that was set to expire on January 21, 2010.  Plaintiff filed a motion for a restraining order compelling defendants to renew the pass.  (Docket Entry #2).  This Court construes these allegations as a potential Eighth Amendment failure to protect claim under <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).  This Court will dismiss the claim and deny the motion without prejudice because the face of the Complaint, together with the exhibits, establishes that Plaintiff failed to exhaust administrative remedies with respect to this claim.

---

[6](...continued)
in and of themselves").

[7] Moreover, nothing submitted by Plaintiff supports his contention that the Central Office improperly processed his appeal.  The regulations provide that "[a]ppeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses."  28 C.F.R. § 542.15(b)(1).  The regulations require the General Counsel to respond within 40 calendar days. <u>See</u> 28 C.F.R. § 542.18.  If the inmate does not receive a response to his or her appeal within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level.  <u>Id.</u>

The PLRA contains an administrative exhaustion requirement for prisoners seeking relief for prison conditions.  The statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007); see also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory"); Booth v. Churner, 532 U.S. 731, 734 (2001) (prisoners must exhaust available administrative remedies, even where the relief sought cannot be granted in the administrative process).  The exhaustion requirement of the PLRA applies to Bivens claims brought by federal inmates.  See Nyhuis v. Reno, 204 F. 3d 65, 69 (3d Cir. 2000).  District courts are authorized to sua sponte dismiss inmate complaints pursuant to 42 U.S.C. § 1997e(a) when the failure to exhaust administrative remedies is apparent from the face of the complaint.[8]  "[T]o

---

[8] See Jones v. Bock, 549 U.S. 199, 215 (2007) (while exhaustion under § 1997e(a) is an affirmative defense rather than a pleading requirement, "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a (continued...)

properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (citation and internal quotation marks omitted).

The Administrative Remedy Program of the BOP is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). The regulations state that "[a]n inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal." 28 C.F.R. § 542.16(a). An inmate must generally attempt to informally resolve the issue first by presenting it to staff in a BP-8 form. See 28 C.F.R. § 542.13. If the issue is

---

[8](...continued)
claim . . . . Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract); Cosgrove v. Cappachella, 2009 WL 781324 (3d Cir. Mar. 26, 2009) (affirming sua sponte dismissal of prisoner complaint for failure to exhaust based on face of pleading); Pena-Ruiz v. Solorzano, 281 Fed. App'x 110, 112 n.3 (3d Cir. 2008) ("Although failure to exhaust administrative remedies is generally an affirmative defense to be pleaded by the defendant, we have recognized that a district court has the inherent power to dismiss sua sponte a complaint such as this one which facially violates a bar to suit"); Ray v. Kertes, 285 F. 3d 287, 295 n.5 (3d Cir. 2002) (where "the plaintiff-prisoners explicitly conceded their failure to exhaust administrative remedies [on the face of the complaint, such] dismissals would thus fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit").

not informally resolved, then the inmate may submit a request for administrative remedy form (BP-9).  See 28 C.F.R. § 542.14.  "The inmate shall obtain the appropriate form from . . . institution staff (ordinarily, the correctional counselor)," 28 C.F.R. § 542.14(c)(1), and he or she "shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)."  28 C.F.R. § 542.14(c)(4).  The Warden must respond within a set time limit, but "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  See 28 C.F.R. § 542.18.  An inmate who is not satisfied with the Warden's response (or lack thereof) may submit an appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  See 28 C.F.R. § 542.15(a).  An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate form (BP-11) to the General Counselor within 30 calendar days of the date the Regional Director signed the response.  Id.  The regulation requires the inmate to mail the appeal to the Regional Director or to the National Inmate Appeals Administrator, Office of General Counsel.  See 28 C.F.R. § 542.15(c)(3).  Appeal to the General Counsel (BP-11) is the final administrative appeal.  See 28 C.F.R. § 542.15(a).

In this case, Plaintiff alleges in the Complaint that he exhausted administrative remedies when he "filed [his] last letter to the Administrative Remedy Coordinator at the central office in D.C. in November of 2008.  He never responded back to my last BP-11."  (Docket Entry #1 at 7.)  Indeed, Plaintiff provided the paperwork regarding Plaintiff's administrative remedy exhaustion to this Court.  (Docket Entry #5.)  The face of the Complaint, together with Plaintiff's exhibits, demonstrate that Plaintiff did not exhaust administrative remedies in 2008 with respect to a failure to protect claim that did not arise until the first floor pass expired on January 21, 2010.  Because exhaustion is mandatory and it is clear from the face of the Complaint that Plaintiff has not exhausted the BOP's three-step Administrative Remedy Program with respect to the first floor pass issue (forming the basis of his potential failure to protect claim), this Court will dismiss the failure to protect claim without prejudice pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies.

D.  Amendment

A court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

27

Because Plaintiff's allegations do not entirely foreclose the possibility that he may be able to assert facts showing that one or more prison officials was deliberately indifferent to his serious medical needs, the dismissal of the Complaint will be without prejudice to the filing of an amended complaint stating a cognizable medical claim under <u>Bivens</u>.

### IV.  CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, dismisses the Complaint, without prejudice to the filing of an amended complaint stating an Eighth Amendment medical claim, and denies Plaintiff's motions.

The Court will enter an appropriate Order.


               /s/ NOEL L. HILLMAN
               **NOEL L. HILLMAN, U.S.D.J.**

Dated: <u>AUGUST 11</u>, 2010

At Camden, New Jersey

28