<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BLAIR JONES, | : | **Hon. Noel L. Hillman** |
| | : | |
| Plaintiff, | : | Civil No. 10-0297 (NLH) |
| | : | |
| v. | : | |
| | : | |
| BUREAU OF PRISONS, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

It appearing that:

1.  Blair Jones, who is currently incarcerated at FCI Fort Dix, filed a Complaint (Docket Entry #1) against the Bureau of Prisons ("BOP") and several medical and non-medical officials.

2.  On August 12, 2010, this Court dismissed the Complaint without prejudice to the filing of an amended complaint stating an Eighth Amendment medical care claim. (Dkt. 7, 8.) This Court found that, while Plaintiff's allegations showed that he had a serious medical need concerning his neck and back, his allegations did not show that defendants were deliberately indifferent to his medical needs.

3.  On September 9, 2010, Plaintiff filed an Amended Complaint, and on November 3, 2010, he filed a memorandum of law in support of the Amended Complaint. (Dkt. 9, 14.)

4.  In the Amended Complaint, Plaintiff essentially repeats the allegations in the Complaint and he expresses his

disagreement with this Court's ruling.  He alleges the following additional facts:

> Doctor Anthony A. Chiuro recommended that Plaintiff be operated on to relieve his pain and suffering after Dr. Chiuro had "read" Plaintiff's MRI on or about July 27, 2010. In fact Dr. Chiuro ordered a myelography be performed on Plaintiff which shows that there is a disk osteophyte complex encroaching on the ventral subarachnoid space causing encroachment on the ventral surface of the spinal cord at C4-C5 . . . .

> Plaintiff has suffered for years now with severe neck and back pain that could/should be relieved through surgery that has been, and continues to be withheld by the very same people that the Court has entrusted Plaintiff to . . .

> As previously stated, a neuro-surgeon has evaluated Plaintiff's MRI and determined that Plaintiff needs surgery to correct the disks in his neck, and the myelography confirmed this diagnosis.

> The defendants made a concerted effort to prevent Plaintiff from consulting with a neuro-surgeon for some five years, and not until Plaintiff filed his Civil Action did the defendants allow Plaintiff to consult with a neuro-surgeon, and the determination by the neuro-surgeon proves beyond a shadow of a doubt that the "prison officials" 'conclusion' was wrong, and they knew it was wrong all along.

> The Regional Director's (defendant [D]odrill) decision denying Plaintiff's appeal states that prison officials determined that an evaluation by a neuro-surgeon is not clinically indicated.  He is merely 'parroting' what the prison officials said, showing that he is blatantly indifferent to Plaintiff's medical condition.  His was yet another unqualified opinion.

The defendants are obligated to make sure
Plaintiff is provided with the proper medical
care.  Plaintiff has been suffering since
before his arrest, and he knew that he would
have to have surgery to correct the disks in
his back.  He has been signing up for sick
call and telling the doctors and physician
assistants for years that he is in severe
pain, and all the defendants did was
prescribe pain medications for Plaintiff to
mask the problem.  All the pain pills do is
take the edge off.  The Defendants know that
pain pills will not 'cure what ails you.'
They have been 'slow walking' Plaintiff for
years because they know that it will take
corrective surgery to stop the pain . . . and
they're trying to save the BOP a few bucks by
letting plaintiff suffer . . . .  If they
were any kind of doctors at all they should
be able to make an educated guess as to why
Plaintiff is in such severe pain . . . .
Although the defendant doctors are not neuro-
surgeons, they should be able to 'read' an
MRI to some degree, if they are any kind of
doctor at all.  And they know that the next
logical step is to have a neuro-surgeon
'read' it because he is an expert at reading
MRI's, and yet the defendants (all of them)
made no effort to allow Plaintiff to have a
consultation with a neuro-surgeon until
Plaintiff filed his civil action.  Now the
defendants have all of a sudden changed their
minds?  . . . .  This is gross negligence .
. . .

Defendant [D]odrill (regional director)
didn't even bother to look into Plaintiff's
medical file and/or get a second opinion as
to whether Plaintiff should be allowed to
consult with a neuro-surgeon.  All he did was
parrot what the other defendants said, and he
would have denied Plaintiff's request for the
renewal of his "First Floor Pass" in the
blink of an eye.

As it turned out, the defendants saw their
way clear to renew Plaintiff's first floor
pass . . . so Plaintiff doesn't have to risk

3

life and limb ascending/descending
staircases.

(Dkt. 9 at 2-9.)

5.    Plaintiff sets forth more facts in his Memorandum of Law
in Support of the Amended Complaint.  (Dkt. 14.)  He alleges that
"the defendants' failure to treat [his medical needs] resulted in
further injury coupled with the wanton infliction of pain when he
collapsed and injured himself on February 6, 2010."  (Id. at 3.)
Three exhibits are attached to the Memorandum of Law:  letter
dated September 28, 2004, from Robert Baraff, M.D.; signed
consent form for surgical procedure dated July 20, 2010; and
assessment dated February 6, 2010, regarding facial injuries
Plaintiff sustained in a fall.  (Id. at 5-8.)

6.    The September 28, 2004, letter is from neurologist
Robert Baraff, M.D., to Alan Cappellini, D.C., and describes the
outcome of Dr. Baraff's neurological evaluation of Plaintiff on
September 28, 2004.  The letter states:

> On 7/16/2003 he had an increase in his lumbar
> discomfort while loading a garbage can of
> grass onto a truck [while working as a truck
> driver loader/unloader.]  His legs were numb
> and gave out.  He fell into the truck and
> injured his cervical area as well as his left
> shoulder area.  He saw the Worker's
> Compensation physician who kept him off of
> work for three days.  X rays were obtained
> and he was referred to Dr. Astana for a
> neurologic evaluation.  A cervical MRI scan
> revealed some bulging discs . . . .  The scan
> was dated 10/7/2003 . . . .  He has not
> returned to work since 2003.  He continues to
> have cervical discomfort radiating into his

4

arms associated with numbness in his hands.
His neck pain is worse with cervical range of
motion and use of his arms.  Because of the
pain, he has had several syncopal episodes
associated with a light-headed feeling.  His
pain is constant.  He received conservative
therapy under your care once every two weeks
. . . .

IMPRESSION:   (1) Cervical strain with
cervical radiculopathy, 7/16/2003.

COMMENT:  This patient has residual signs and
symptoms related to his injury at work on
7/16/2003.  In my opinion, he should see a
neurosurgeon as soon as possible.  Further
chiropractic care is indicated.  Should his
condition deteriorate, then hospitalization
may be required.  His past records have been
reviewed.  We have discussed the fact that he
appears to have some spinal cord compromise
on his scan and that deterioration in his
condition from even a minor injury could
cause quadriparesis, paraplegia, loss of
bowel and bladder, etc.  I shall prescribe
Depakote . . . .  I shall re-evaluate him in
several weeks.

(Dkt. 14 at 5-6.)

    7.  The February 6, 2010, assessment by provider Aimee

Ackley, NREMT-P, states:

Called to 58-02 for an inmate that has facial
injuries he sustained form a fall . . . .
The patient was sitting in a chair . . . .
He states he remembers getting up to walk to
the bathroom and the next thi[ng] was
everyone standing over him.  The other
inmates in the room state that he stood up
and his legs gave out and he fell onto the
table.

PE:  Rt side facial injuries:  Bruising to
the rt eye, upper and lower lids, small 1 cm
laceration in the corner of the rt eye, no
active bleeding . . . .  The on call MD was

notified as a precaution and advised to place
the inmate on sick call for follow-up blood
pressure monitoring.  He is given ice and
instructions, a steri-strip is placed on the
laceration to prevent further bleeding and
the patient is returned to his unit w/o
incident.

(Dkt. 14 at 8.)

8.  "To show deliberate indifference, a plaintiff must do
more than simply allege medical malpractice or express
disagreement regarding the treatment provided." <u>Watkins v. Cape
May County Correc. Center (Medical Dept.)</u>, 240 Fed. App'x 985,
986 (3d Cir. 2007) (citing <u>Monmouth County Corr. Inst. Inmates</u>,
834 F. 2d at 346).  As the Supreme Court explained:

> [T]he question whether an X-ray or additional
> diagnostic techniques or forms of treatment
> is indicated is a classic example of a matter
> for medical judgment. A medical decision not
> to order an X-ray, or like measures, does not
> represent cruel and unusual punishment. At
> most it is medical malpractice . . .

<u>Estelle</u>, 429 U.S. at 107.

9.  Moreover, "absent a reason to believe (or actual
knowledge) that prison doctors or their assistants are
mistreating (or not treating) a prisoner, a non-medical prison
official . . . will not be chargeable with the Eighth Amendment
scienter requirement of deliberate indifference." <u>Spruill v.
Gillis</u>, 372 F. 3d 218, 236 (3d Cir. 2004).

10.  In this case, Plaintiff's medical care claim fails
because the facts alleged in the Complaint, supplemented by the

6

facts alleged in the Amended Complaint and Memorandum of Law, do not show that the medical defendants knew that they were providing inadequate medical care and intentionally ignored Plaintiff's need for medical care different from what was being provided.  At best, Plaintiff's allegations, as supplemented by the Amended Complaint, indicate that the medical defendants were negligent.  "When a prisoner receives medical treatment and disputes the adequacy of that treatment, [federal courts] are reluctant to second guess the doctor's medical judgment. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004).  Mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.'  See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987)."  Quinn v. Dietman, 413 Fed. App'x 419, 422 (3d Cir. 2011).  Moreover, because Plaintiff's allegations do not show that the non-medical defendants had reason to believe that prison doctors were mistreating Plaintiff or denying medical care, the Amended Complaint does not show that the non-medical defendants were deliberately indifferent.  See Spruill, 372 F. 3d at 236.  Under these circumstances, this Court will dismiss Plaintiff's Eighth Amendment medical care claim in the Amended Complaint for failure to state a claim upon which relief can be granted.

11.  This Court further construes Plaintiff's allegations as seeking reconsideration of this Court's dismissal of the failure

to protect claim (alleging failure to renew first floor pass) for failure to exhaust administrative remedies.  As quoted above, Plaintiff believes that exhaustion would be futile because he thinks officials would have ultimately denied his request to renew the pass.  However, Plaintiff asserts that officials at FCI Fort Dix did renew his first floor pass.  After reconsideration, this Court will again dismiss Plaintiff's failure to protect claim for failure to exhaust administrative remedies, as Plaintiff has not shown that seeking administrative relief would be (or was) futile.

12.  This Court will dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  This Court thoroughly explained the law to Plaintiff in dismissing the original Complaint.  Plaintiff's attempt to cure the defects in the Complaint by supplementing the Complaint failed to establish deliberate indifference.  This Court finds that further attempts to amend would be futile.

13.  An appropriate Order accompanies this Memorandum Opinion.


                          s/ Noel L. Hillman
                          **NOEL L. HILLMAN, U.S.D.J.**

Dated:   July 29 , 2011

At Camden, New Jersey


8