**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
 _____
                                :
BLAIR JONES,                    :
                                :
                                :
                   Plaintiff,   :
                                :
                                :
                          v.    :
                                :
                                :
BUREAU OF PRISONS, et al.,      :
                                :
                                :
                   Defendants.  :
                                :
 _____ :
```

**Hon. Noel L. Hillman**

Civil No. 10-0297 (NLH)

**OPINION**

**HILLMAN, District Judge:**

    1.  Blair Jones, who is incarcerated at FCI Fort Dix, filed a Complaint (Dkt. 1) against the Bureau of Prisons ("BOP") and several medical and non-medical officials.  Presently before this Court is his motion to reconsider the dismissal of his Amended

Complaint for failure to state a deliberate indifference claim under the Eighth Amendment. [Dkt. 17.]

2.   This Court will not repeat the detailed factual allegations, which are set forth in this Court's two prior Opinions.  [Dkt. 7 & 15.]  Suffice it to say that this Court dismissed the original Complaint without prejudice to the filing of an amended complaint stating an Eighth Amendment medical care claim.  [Dkt. 7, 8.]  This Court found in its first Opinion that, while Plaintiff's allegations showed that he had a serious medical need of degenerative disc disease, his allegations did not show that defendants were deliberately indifferent to his pain and medical needs.

3.   Plaintiff filed an Amended Complaint, and on November 3, 2010, he filed a memorandum of law in support of the Amended Complaint.  [Dkt. 9, 14.]  Plaintiff repeated the allegations in the Complaint, expressed disagreement with this Court's ruling, and alleged that on July 27, 2010, Dr. Anthony A. Chiuro prescribed surgery to relieve Plaintiff's pain after reading the most recent MRI.  [Dkt. 9.]  In a Memorandum of Law in Support of the Amended Complaint, he alleged that "the defendants' failure to treat [his medical needs] resulted in further injury coupled with the wanton infliction of pain when he collapsed and injured himself on February 6, 2010."  [Dkt. 14 at 3.]  Three exhibits are attached to the Memorandum of Law:  letter dated September

2

28, 2004, from Robert Baraff, Board Certified Neurologist; signed consent form for surgical procedure by Dr. Chiuro dated July 2010; and assessment dated February 6, 2010, regarding facial injuries Plaintiff sustained in a fall.  [Id. at 5-8.]  The September 28, 2004, letter from neurologist Baraff to Dr. Cappellini, chiropractor, described the outcome of Dr. Baraff's neurological evaluation of Plaintiff on September 28, 2004.  [Dkt. 14 at 5-6.]

    4.  This Court screened the Amended Complaint, as required by 28 U.S.C. § 1915(e)(2)(B) and § 1915A, and determined that the facts alleged in the Amended Complaint and Memorandum of Law did not show that the medical defendants deliberately provided inadequate medical care, intentionally ignored Plaintiff's pain and medical needs, or deliberately delayed MRI testing and evaluation by a neurosurgeon for non-medical reasons.  This Court found that Plaintiff's new allegations (like his previous allegations) showed at best that the medical defendants may have been negligent in not expediting repeated MRI testing and not immediately sending Plaintiff to a neurosurgeon when he requested it.  This Court noted that the Third Circuit has repeatedly stated that,

> [w]hen a prisoner receives medical treatment and disputes the adequacy of that treatment, [federal courts] are reluctant to second guess the doctor's medical judgment. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004).

3

> Mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.' See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987).

Quinn v. Dietman, 413 Fed. App'x 419, 422 (3d Cir. 2011).

5. This Court further found that, because Plaintiff's allegations in the Amended Complaint did not show that the non-medical defendants had reason to believe that prison doctors were obviously and intentionally mistreating Plaintiff or refusing to provide medical care for his orthopedic condition, the Amended Complaint did not show that the non-medical defendants were deliberately indifferent. See Spruill, 372 F. 3d at 236.

6. Accordingly, this Court dismissed Plaintiff's Eighth Amendment medical care claims in the Amended Complaint against all defendants for failure to state a claim. [Dkt. 15, 16.] The dismissal was with prejudice, given that this Court's first Opinion had outlined the legal standard and given Plaintiff an opportunity to correct the defects in the Complaint; Plaintiff failed to do so in the Amended Complaint because defendants were not in fact deliberately indifferent.[1]

---

[1] This Court also construed Plaintiff's allegations as an attempt to seek reconsideration of this Court's prior dismissal of the failure to protect claim (alleging failure to renew first floor pass) for failure to exhaust administrative remedies. Plaintiff argued that exhaustion would be futile because officials would have ultimately denied his request to renew the pass. After reconsideration, this Court again dismissed Plaintiff's failure to protect claim for failure to exhaust administrative remedies. Clearly, in light of the fact that BOP officials did renew his first floor pass, administrative exhaustion was not futile in his case.

4

7. Presently before this Court is Plaintiff's motion (Dkt. 17) to reconsider the dismissal of the Amended Complaint. Plaintiff maintains that this Court erred in dismissing the Eighth Amendment medical claim raised in his original Complaint, as well as his Amended Complaint, because both pleadings showed that BOP medical officials failed to follow treatment prescribed before he went to prison in July 2005. Specifically, he states:

> In this Court's OPINION (4) the court states that: "Plaintiff essentially repeats the allegations in the Complaint . . ." Plaintiff's original complaint was pretty explicit when stating the claim for which he sought relief from this Court. Plaintiff was at a loss as to why the court was unable to grasp the fact that Plaintiff was, and still is, being denied treatment that was once prescribed, see Estelle v Gamble, 429 U.S. at 105, and so he repeated his complaint hoping the court would be able to comprehend it the second time . . . . This is on all fours with Estelle v. Gamble, 429 U.S. at 105 . . . Plaintiff can go on and on but he hopes the court will be able to see that the Defendants are denying Plaintiff proper medical care and 'treatment.'
>
> Plaintiff will not muddy the waters with further arguments as this one, standing alone, is suffic[ient] to warrant the reopening of Plaintiff's civil case.

[Dkt. 17 at 1-2.]

8. "The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A proper Rule 59(e) motion for

5

reconsideration must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.  See N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995).

9.  In this case, Jones apparently argues that reconsideration is warranted to correct a clear error of law and prevent manifest injustice because, according to Plaintiff, his Complaint and his Amended Complaint asserted facts showing that BOP defendants were deliberately indifferent by failing to follow through on treatment prescribed before he went to prison in 2005.  This Court will grant the motion for reconsideration, and again consider whether Plaintiff's allegations show deliberate indifference.  See N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d at 1218.

10.  This Court has reviewed all of Plaintiff's submissions, including the 10-page Complaint [Dkt. 1], a seven-page motion for a restraining order [Dkt. 2], a two-page motion seeking an order for evaluation by a neurosurgeon [Dkt. 4], 38 pages of exhibits [Dkt. 5], an 11-page Amended Complaint [Dkt. 9], and an 11-page memorandum with exhibits [Dkt. 14].

11.  First, Plaintiff does not assert facts showing that a neurosurgeon (or other qualified physician) prescribed neurosurgery as a medically necessary treatment for Plaintiff's

6

degenerative disk disease before Plaintiff entered jail in July 2005 (and FCI McKean in 2006).[2]  Plaintiff's allegations and submissions show that Plaintiff received adjustments and other treatment from his chiropractor, Dr. Cappellini, before his imprisonment; on September 28, 2004, Dr. Robert Baraff, a Board Certified Neurologist, evaluated Plaintiff and sent a two-page report to Dr. Cappellini; and Plaintiff himself had scheduled an appointment with a neurosurgeon for the day of his arrest in July 2005.  Dr. Baraff's report states that Mr. Jones suffered a lumbar injury in 1985 and on July 16, 2003, when his legs went numb and he fell into a truck he was loading; Dr. Astana performed a neurologic evaluation in 2003, when an MRI scan revealed bulging discs.  [Dkt. 14 at 5.]  Dr. Baraff stated in 2004 that Mr. Jones "has not returned to work since 2003 [and h]e continues to have cervical discomfort radiating into his arms associated with numbness in his hands.  His neck pain is worse with cervical range of motion and use of his arms.  Because of the pain, he has had several syncopal episodes associated with a light-headed feeling.  His pain is constant."  [Id.]  Dr. Baraff commented:  "In my opinion, [Mr. Jones] should see a Neurosurgeon as soon as possible[; f]urther chiropractic care is indicated[;

---

[2] Plaintiff's submissions indicate that the first time any doctor prescribed neurosurgery was in July 2010 when Dr. Chiuro evaluated him and apparently scheduled him for surgery. [Dkt. 9.]

7

and, s]hould his condition deteriorate, then hospitalization may be required." [Id. at 6.]

12.  Second, Jones does not assert facts showing that the BOP doctors refused to provide treatment for his pain and degenerative disc disease.

13.  Third, the fact that BOP doctors did not immediately send Plaintiff to a neurosurgeon does not show deliberate indifference under the plausibility standard of Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009). To satisfy the plausibility standard, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" deliberate indifference. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). If the allegations give rise to an "obvious alternative explanation," Iqbal, 129 S. Ct. at 1951, Twombly, 550 U.S. at 567, then the complaint "stop[s] short of the line between possibility and plausibility of 'entitle[ment] to relief.'" Twombly, 550 U.S. at 557. Applying this standard to Plaintiff's allegations, this Court finds that the delay in sending Plaintiff to a neurosurgeon in accordance with Dr. Baraff's opinion in 2004 that such a consultation was warranted, is consistent with a difference of medical judgment, an exercise of medical judgment concerning the need for current MRI testing, or negligence.[3]

---

[3] "To show deliberate indifference, a plaintiff must do more than simply allege medical malpractice or express disagreement regarding the treatment provided." Watkins v. Cape May County Correc. Center (Medical Dept.), 240 Fed. App'x 985, 986 (3d Cir. 2007) (citing

8

Thus, Plaintiff's allegations with respect to the delay in sending him to a neurosurgeon until 2010 stop short of the line between possibility and probability of deliberate indifference.

    14.   Fourth, Jones does not assert that BOP doctors refused to send him for MRI scans. Rather, he alleges that he "has had four (4) MRI's performed on him and every time he has been scheduled to see a neuro-surgeon, the MRI was too old to be of much use to the Neuro-surgeon." [Dkt. 4 at 1.] But such delay or failure to coordinate the timing of testing and consultation is consistent with negligence, which does not show deliberate indifference under the plausibility standard.

    15.   Finally, Mr. Jones argues that the fact that Dr. Chiuro, presumably a neurosurgeon, prescribed surgery in July 2010 "proves beyond a shadow of a doubt that the 'prison official[']s' 'conclusion' was wrong, and they knew it was wrong all along." [Dkt. 9.] Mr. Jones refers to the Regional Director's decision dated April 15, 2008, denying administrative relief on the ground that the prison's Clinical Director, after reviewing the most recent MRI, determined that "there was no

---

Monmouth County Corr. Inst. Inmates, 834 F. 2d at 346). As the Supreme Court explained:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . .

Estelle, 429 U.S. at 107.

medical indication for referral to a neurosurgeon at that time." [Dkt. 5 at 27; Dkt. 9.]  However, the fact that the Clinical Director determined that an evaluation by a neurosurgeon was medically indicated in 2010 does not plausibly show that the Clinical Director was deliberately indifferent when he determined in 2008 that such an evaluation was not medically warranted. Under the plausibility standard, Plaintiff's allegations are consistent with a change in medical condition in 2010 or medical negligence, at worst.

16. After reconsideration, this Court again concludes that Plaintiff's allegations fail to plausibly show that the named defendants were deliberately indifferent to his pain and degenerative disc disease.

17. An appropriate Order accompanies this Memorandum Opinion.

                                     /s/ Noel L. Hillman
                                      **NOEL L. HILLMAN, U.S.D.J.**

Dated:   January 9  , 2012

At Camden, New Jersey